**MORGAN, Appellee, v. HUNSICKER, Appellant.**

Ohio Appeals, First District, Butler County.

No. 881.   Decided June 8, 1944.

290

Messrs. Andrews & Weiss, Hamilton and Mr. Gavin H. Cochran, for Appellee.

Mr. Harry S. Wonnell, Hamilton, for Appellant.

## OPINION

By HILDEBRANT, J.

Appeal by defendant-appellant on questions of law from a judgment entered on the verdict of a jury for $7500.00 damages for personal injuries incident to a collision between an automobile in which plaintiff-appellee was riding and one being driven by defendant-appellant.

At about 7:50, P. M., of December 7, 1940, and after dark, plaintiff was riding, three in the front seat, of a Chevrolet automobile being driven by one Stuart in a northwardly direction on U. S. Route 25, at a point approximately one mile north of the Village of Monroe, in Butler County Ohio. Defendant, riding alone, was driving a Packard automobile southwardly along said U. S. Route 25 at this time and place. A third car proceeding southwardly passed defendant's car, pulling out to do so, when all cars being in view of one another, operated with head lights on, were about the estimated distance of a city block apart and describing a shallow S in so doing, came so close to the automobile in which plaintiff was riding that the left rear fenders of the two cars

clicked together. An instant later, the collision occurred. Defendant's car came to rest on its own side of the road near the berm, and the Chevrolet some little distance to the north off the road to its right and against the fence. Pictures introduced showed defendant's car smashed on left front and side with right fender and lights intact, and Chevrolet smashed across whole front with its right front fender and headlight assembly thereon more demaged than the left. Also a picture of the scene of the collision looking to the south showed tracks curving from east berm in northwestwardly direction to the center line of the road across the traffic lanes of the Chevrolet.

Defendant complains as to the sufficiency and weight of the evidence; as to the overruling of motions for a directed verdict at the close of plaintiff's case, at the close of all the evidence, and non obstante veredicto; as to the refusal to withdraw from the consideration of the jury at the close of Plaintiff's evidence and again at the close of all the evidence, the specifications of negligence set forth in the amended petition and each of them separately, as to the giving of plaintiff's three special charges; as to the denial of defendant's special charge No. 3; as to the admission and exclusion of evidence over objection; as to the general charge of the court; as to misconduct of counsel in interrogating the jury on voir dire about insurance, and, again as to comments before the jury on refusal of defendant's counsel to permit examination of certain photographs being identified on cross-examination; and as to other claimed irregularities during the trial.

The plaintiff testified as follows on direct examination:

"Q. And state whether or not you noticed any oncoming cars at about that time?

A. After we went around the curve I noticed two cars approaching.

Q. And where were you—that is, where was your car when you first noticed the on-coming cars?

A. We had just gone around the curve and started down this slope.

Q. In other words, you saw them as you rounded the curve enough to see around it, that is?

A. Yes.

Q. And about where or how far away from your car were those two on-coming cars when you first saw them?

A. About a city block away.

Q. State whether or not the two cars when you first saw them were one behind the other or abreast or how they were in the road?

A. The second one was just pulling out to pass the first.

x x x x x

Q. Now from your observation and what you saw, Mrs. Morgan, where was this first car in relation to the center line of the road when you first observed it?

A. It was on the center line.

Q. What do you mean by on the center line—which portion of the on-coming car—its left wheels, right wheels, middle of it, what?

A. The left wheels were on our side of the center line—over the center line.

x x x x x x

Q. State whether or not the road between you and those two on-coming cars was free and unobstructed or whether it was—whether there was anything there to obstruct your vision?

A. There was nothing to obstruct our vision.

x x x x x x

Q. Now going back to the moment—the instant before the accident for a minute—state what, if anything, the driver of your car did as the two cars were seen approaching you on the road?

A. She slowed down to 25 miles an hour and pulled over off the highway.

Q. What do you mean by off the highway?

A. Off of the main highway—over on to the shoulder.

Q. Off of the asphalt on to the berm?

A. Yes.

Q. And how much of the car in which you were riding was pulled off of the main highway? In other words, was the whole car, just the right wheels, or half, what part?

A. Just the right wheels, I think.

x x x x x x

Q. In your best judgment, from what you saw and observed as you sat there in the car, tell the jury how much of the car in which you were riding was pulled over to the right, off of the main portion of the road?

A. You mean by inches how much the wheels were off.

Q. I want you to give the jury your best judgment from what you saw and observed and not what you think.

A. The right wheels—both right wheels—were well off on the shoulder."

On cross-examination, plaintiff testified:

"Q. You wouldn't say Mrs. Hunsicker's car was to the left of the center of the highway at the time of the collision, would you?

A. I can't say because I don't recall it."

Witness Rousseau, called by plaintiff, testified:

"Q. As you rounded the curve, did you see anything that attracted your attention?

A. After we had got around the curve we saw two cars approaching.

Q. About how far away were those cars when you first saw them?

A. They were about a block away when we first saw them.

Q. So the accident must have happened between the end of the curve and some point a block away, did it?

A. That's right.

Q. Did you later learn what car of those two automobiles was first?

A. It was the car driven by Mrs. Hunsicker.

Q. Speaking of that as the Hunsicker car to avoid confusion, what sort of car was the Hunsicker car?

A. I don't know.

Q. When you first saw the Hunsicker car about a block away coming toward you what was its position in the road— did you notice?

A. It had its left wheels on the east side of the center line of the highway.

Q. And where was the second car at that time?

A. It was immediately behind the Hunsicker car and almost at the moment that we noticed it, it started around the Hunsicker car.

x x x x x x

Q. Will you describe the movement of the Hunsicker car as the other car tried to come around it?

A. It seemed to keep its relative position on the road so that the second car had to pull way around to its left on the east side of the highway to get around it.

Q. In your best judgment, what was the speed of the Hunsicker car when you first saw it about a block away?

A. About 60 miles an hour.

Q. And the other car that was passing it, about how fast was it going?

A. Well, it would have to be going about—

Defendant objects.

Q. What do you judge it to be?

A. I judge it to be about 70 miles an hour.

Q. As the car in which you were riding approached this lefthand curve that you mentioned, about how fast were you going?

A. As we came around the curve we were going around 40, 35 or 40 miles an hour.

Q. Just before you got to the curve had you been going at the same speed?

A. We had driven throughout the trip at about 45.

Q. And what was the occasion of the difference in speed as you rounded the curve?

A. Miss Stuart slackened the speed of her car in going around the curve.

Q. After you rounded the curve and saw these two cars approaching you on the highway, state whether or not there was then any change in the speed of your car?

A. Yes, when we saw the second car coming around the Hunsicker car, Miss Stuart further slackened the speed and pulled to our right side, east side of the highway.

Q. And state if you can tell and know how far over to the right she did pull?

A. Well, her right wheels were off the highway, off on the shoulder of the road.

Q. Now state whether or not you saw and observed the two oncoming cars from the moment you rounded the curve up until the time the accident occurred?

A. Yes, the road is quite straight after you come around the curve. It is straight northward.

Q. And did you or not keep, on looking at the two cars?

A. Indeed.

Q. State whether or not there was any change in the speed of the Hunsicker car from the time you first saw it until the time of the accident.

A. Well, no appreciable difference.

Q. And in your best judgment at about what rate of speed was it traveling at the time of the impact?

A. 55 to 60 miles an hour.

Q. Now state whether or not anything unusual took place in respect to the passing of this second car?

A. In passing the Hunsicker car?

Q. Yes.

A. It had to pull quite far over to its left.

Defendant objects.

Q. Tell what it did.

A. It pulled quite far over to its left in passing the Hunsicker car.

Q. And as it approached the car in which you were riding, did anything occur?

A. Well, after it got—as it came to us it was so far over on our right hand side of the highway that in coming by us, its left rear fender slightly grazed our left rear fender.

Q. About how far away were you from the two cars approaching after they got abreast of each other?

A. I would guess about 100 feet.

Q. And then state whether or not the car that was passing the Hunsicker car changed its course in any way?

A. After coming by the Hunsicker car it turned sharply to its right to the west side of the highway and got by our front end—we were well on the east side of the highway but its left rear fender slightly grazed our left rear fender in coming by us.

Q. Was there any appreciable jolt in your car when that contact came?                ?

A. There wasn't any jolt—there was a metallic sound when he struck our left rear fender, but no jolt.

Q. Was that a loud sound?

A. Just a click—not loud.

Q. State whether or not that was the only indication you had of any contact between the two cars?

A. Yes, and that was its rear with our rear.

Q. Now how soon after that did the collision occur—was it a minute or minutes, seconds, or what?

A. Just a second later.

Q. State the position in respect to the east and west side of the road of the car in which you were riding at the instant of the impact between your car and the Hunsicker car occurred—I want you to tell the jury where your car was in respect to the east or west or middle way of the road at the time of the impact between your car and the Hunsicker.

A. It was completely on the east side of the highway, in the right lane going northward.

Q. Was there any deviation in its course between the time you heard this slight metallic click of the two fenders scraping and the time of the impact with the Hunsicker occurred?

A. A deflection, I would say, of between a foot and eighteen inches, no more than eighteen inches; there was a slight deflection to the left.

Q. And at the time this brushing of fenders, where was the right half, the right side of the car in which you were riding in reference to the right edge of the main portion of the highway?

A. Well, the right wheels were near the edge of the highway. It is my judgment they were off the hard portion, on the shoulder of the road.

Q. And at the moment of the impact, describe the position in your best judgment of the left side of the automobile in which you were riding—that is at the moment of the collision with the Hunsicker car.

A. Well, it is my best judgment the left front wheel of the car was—of our car was no more than twelve inches to the east side of the center line of the highway, and the left rear fender perhaps a little bit more to the east of the center line of the highway, because there had been just a second in which we had had—Miss Stuart had an opportunity to straighten her car more straight ahead.

x x x x x x x

Q. Now at the time of the impact between the car in which you were riding and the Hunsicker car, at what speed was your car traveling in your best judgment?

A. About 25 miles an hour.

Q. State whether or not there was any change in the course of the Hunsicker car from the time you first saw it a block away until the time of the collision.

A. When the second car passed our car it seemed to be crowding the second car more to the east side of the highway.

Q. Who seemed to be crowding?

A. The Hunsicker car seemed to be crowding the second car more to the east side—after the second car had gone by us, the Hunsicker car, the headlights of the Hunsicker car were directly in front of us on the east side of the highway."

The State Highway patrolman called by plaintiff testified as to the position of the cars and the damaged areas, that the debris of glass, mud, etc. seemed to be about the center of the highway 10 or 15 feet in front of defendant's car, but covered such a large area, he couldn't be exact as to its indicating the point of impact and that he smelled alcohol on defendant's breath, and defendant admitted having two or three

drinks in Dayton, and that defendant embraced him in an hysterical manner which might have been due to shock of the accident.

The defendant denied driving her car to her left of the center line of the highway and testified to hearing the click of the fenders of the passing car with the car in which plaintiff was riding and that an instant later the Chevrolet was precipitated somewhat at right angles into the left front part of defendant's car; defendant further denied embracing the patrolman, and called three witnesses in whose car she sought shelter after the accident and in which she was driven to Monroe twice to telephone and later to Cincinnati, who testified they smelled no alcohol, and, being present at all times, defendant did not embrace the patrolman.

Defendant further testified as to the position of her car after the accident, being on her own right or west berm, so that she stepped from her car into the mud at the west edge of the highway on alighting therefrom. Defendant's husband testified as to taking the pictures the following day and as to the course of the tracks shown on Exhibit and the damaged areas of the two cars, and the finding of bits of the debris on the west side of the center line of the highway. On rebuttal, the witness Rousseau categorically controverted defendant's testimony as to the position of the cars at the time of the collision.

Defendant first contends the physical facts outweigh and exclude the possibility of accuracy of plaintiff's testimony, and that no culpable negligence is shown.

From the foregoing, it will be seen that defendant's motion for a directed verdict at the close of plaintiff's evidence was properly overruled, as substantial evidence in support of plaintiff's case was offered, and at the close of all the evidence, it being conflicting, it was the sole province of the jury to determine the facts, therefore the renewed motion was properly overruled. A fortiori, the motion non obstante verdicto could not be granted.

The tests to be applied in passing on these motions, together with the rules of construction favorable to the plaintiff, are discussed and set forth with appropriate citations in 39 O Jur, p. 793, et seq. The Court is not critical of the law set forth in Cleveland Ry. Co. v. Orwig, 124 Oh St, 134, Cleveland City Ry. Co. v. Osborn, 66 Oh St, 45, but can distinguish them, and feels they are not dispositive of the instant case.

Plaintiff's special request No. 1 was as follows:

"Under the law, Mrs. Morgan riding in Miss Stuart's car is not responsible for and cannot be charged with the negligence,

if any, of the driver of the automobile in which she is riding. If Miss Stuart and the defendant Mrs. Hunsicker, were both negligent, and the negligence of each contributed directly to the collision and to her injuries, and if the plaintiff, Mrs. Morgan, was herself free from any negligence contributing to her injuries, the defendant, Mrs. Hunsicker would be liable and your verdict should be for the plaintiff, Mrs. Morgan, if you find by a preponderance of the evidence that such was the fact."

Defendant contends the above charge wrongly assumes both drivers negligent and fails to contain limitations or instructions providing for excusing defendant of any culpable negligence and cites **Kohn v. Goodrich Co., 139 Oh St, 141.**

This Court is of the opinion the language of the charge is apt to the evidence in the case and the same was properly given.

Plaintiff's special charge No. 2 is:
"The Court charges you that if the plaintiff, Mrs. Morgan, sustained injuries directly and proximately resulting from any negligence on the part of the defendant, Mrs. Hunsicker, in one or more of the respects charged in plaintiff's amended petition, even though Miss Stuart, the driver of the automobile in which plaintiff was riding, may have been guilty of negligence, if you find that such negligence and the negligence of the defendant, Mrs. Hunsicker, concurred and both contributed directly and proximately to these injuries, nevertheless under the law the plaintiff was entitled to proceed against either the defendant, Mrs. Hunsicker, or Miss Stuart, or both of them, for her injuries at her election. The fact that another suit or suits may be or are pending against Miss Stuart, the driver of the automobile in which the plaintiff was riding, should not influence you in a consideration of the evidence presented to you in this case."

The Court finds nothing misleading or erroneous in the above charge.
Plaintiff special charge No. 3 is:

"The Court says to you that if you find that Mrs. Hunsicker operated her motor vehicle to the left of the center line of said highway immediately before the collision and such operation directly and proximately contributed to the collision of her automobile with the automobile of Miss Stuart and to

any injuries that you may find Mrs. Morgan sustained therein, and that Mrs. Morgan was herself free from any negligence on her part that might have directly or proximately contributed thereto, the defendant, Etta Hunsicker, under such circumstances is liable to the plaintiff herein, no matter at what point on said highway you find said automobiles of Miss Stuart and Mrs. Hunsicker came together."

Defendant contends the instruction to be, that if the jury find the defendant was to the left of the center line of the highway before the collision, she is negligent no matter at what point on the highway the collision occurred. If this contention were accurate, it would be erroneous, but the charge says "immediately before the collision."

Webster's New International Dictionary defines the words "immediate" and "immediately" as follows: Having no intermediary or intermediation; acting without intervention of another object, cause or agency, as, an immediate cause; not distant or separated in time or space; adjoining, nearest; next;— of space:— in uninterrupted relation; continuous; direct; as the immediate contact of two objects;—of time;—occurring without delay; made or done at once; present; instant; immediately; without interval of time; without delay; straightway; instantly; at once.

While the inclusion in the charge of the language "no matter, etc." tends to confuse rather than to clarify, the connotation of the words "immediate" and "immediately" preclude the possibility of collision at a point east of the center line so that the language complained of must be construed to refer to a north and south position.

The Court fails to find prejudicial error therein and the contention, therefore, must fail.

Defendant submitted the following special request, No. 3:

"I charge you that if the defendant, Mrs. Hunsicker, without fault of her own, was placed in a position of great mental stress or sudden emergency, the same degree of judgment and care is not required of her as is required of one who is acting under normal conditions. The test to be applied is whether or not the person in such a position of great mental stress or sudden emergency, did, or attempted to do, what a reasonably prudent person would have done under the same or similar circumstances.

"If, therefore, you find from the evidence in this case that the defendant, Mrs. Hunsicker, without fault of her own, was placed in a position of great mental stress or sudden

emergency, and that while in such position she did or attempted to do what any reasonably prudent person would have done under the same or similar circumstances, then she was not negligent, and in such case your verdict should be for the defendant, Mrs. Hunsicker."

The Court fails to find circumstances justifying a charge on great mental stress and emergency different from any other automobile collision case, and finds the request to so charge properly refused.

The Court finds no prejudicial error in the general charge.

As to misconduct of counsel and irregularities during the trial, the reference to insurance on the voir dire examination as shown by the record does not seem to the Court inconsistent with the law as announced in the Dow-Feder case, reported in **130 Oh St, 530,** nor does the colloquy between counsel with reference to examining the pictures, nor the court's remarks at that time or any time during the case amount to prejudicial error.

The plaintiff herein was not the driver of the Chevrolet, and the negligence of the driver of the Chevrolet, if any, cannot be imputed to this plaintiff, creating a situation which must not be ignored.

The physical facts are consistent with defendant's car being operated obliquely from the east portion of the road across the center line in returning to its lawful position, and if the jury took that view of the evidence, this Court cannot say that such view is against the weight of the evidence.

There being no prejudicial error in the record, the judgment is affirmed.

ROSS, P. J., and MATTHEWS, J., concur.